# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

DON MERCELEANY R. MAXWELL/G-DOFFEE                    PLAINTIFF
ADC #108778

V.                       No. 5:19-cv-00225-BSM-JTR

MELVIN J. WOOTEN, Sergeant,
Arkansas Department of Correction,
Maximum Security Unit, *et al.*                        DEFENDANTS

# ORDER

On June 23, 2020, the Court screened the § 1983 Complaint filed by Plaintiff Don R. Maxwell/G-Doffee ("Maxwell/G-Doffee") and allowed him to proceed with his retaliation claim against Defendants Melvin J. Wooten ("Wooten"), Felecia Bentley ("Bentley") and unnamed John or Jane Does.[1] *Docs. 13, 17*. The Court dismissed all of Maxwell/G-Doffee's other claims. *Id.*

Maxwell/G-Doffee later served Wooten and Bentley with a Request for Production of Documents and a set of Interrogatories that were directed only to Wooten. In response to that discovery, Defendants' counsel, Michael Mosley ("Mr. Mosley"), objected to producing the documents described in two of the three requests for production, and to answering ten of the thirteen interrogatories.

---

[1] According to Maxwell/G-Doffee's pleadings, Defendants allegedly retaliated against him for: (1) filing other § 1983 actions in federal court; (2) obtaining the reversal of a disciplinary issued by Wooten, on November 14, 2018; and (3) practicing his religious beliefs. *Doc. 13, 17*.

On October 8, 2020, Maxwell/G-Doffee filed the pending Motion to Compel in which he argues Defendants should be required to produce all of the requested documents and provide answers to the ten interrogatories to which Wooten interposed objections. *Doc. 26*. Defendants filed a Response arguing the Motion to Compel should be denied because: (1) Maxwell/G-Doffee failed to "confer" with Mr. Mosley to attempt to resolve the discovery dispute *before* filing the Motion to Compel, as provided for in Rule 37(a) and Local Rule 7.2(g); and (2) all of their objections to the discovery are proper and should be sustained.  *Doc. 27*.

For the reasons explained below, Plaintiff Maxwell/G-Doffee's Motion to Compel is granted in part and denied in part.

**I. Maxwell/G-Doffee's Failure to Comply with the "Confer" Obligation in Rule 37(a) and Local Rule 7.2(g) Does Not Support The Denial of his Motion to Compel**

The Advisory Committee Notes reflect that, in 1993, Rule 37(a) was amended to provide that litigants should "confer," before filing a motion to compel; thereby allowing them an opportunity to "resolve discovery disputes by informal means before filing a motion with the Court."   The rationale for this amendment was based on the Committee's well founded belief that, in most cases, *the attorneys* for the parties (who are bound by the Code of Professional Conduct and have a well-grounded understanding of the federal rules of discovery and the related case law),

should be able to candidly discuss the discovery disputes and hash out their disagreements, without requiring a judge to act as a referee.

In this case, however, which is being prosecuted by a *pro se* prisoner, the rationale for the "confer" obligation collapses under the weight of the practical considerations surrounding Maxwell/G-Doffee's limited ability to meaningfully confer with Mr. Mosley and have any realistic expectation of resolving the discovery dispute. These same practical considerations inevitably require judges to resolve discovery disputes in § 1983 *pro se* prisoner cases, regardless of whether the prisoner complies or does not comply with the "confer" obligation in Rule 37(a)(1).

While Mr. Mosley makes the conclusory argument that I should deny Maxwell/G-Doffee's Motion to Compel because of his failure to "confer," he does *not* address *how* Maxwell/G-Doffee was supposed to go about doing that, *or* provide a plausible basis for believing that, if they did "confer," it might have resulted in their voluntary resolution of the discovery dispute. *Doc. 27 at 1*. All of this undermines Mr. Mosley's argument and illustrates why it lacks any substantive merit.[2]

---

[2] In my experience, *pro se* prisoners in § 1983 cases almost always file their motions to compel, without complying with the "confer" obligation in Rule 37(a)(1). In their responses to those motions, defense counsel generally address only the merits of why their objections to the discovery should be sustained, and do not use the prisoner's failure to comply with the "confer" obligations as a procedural ground for requesting the Court to deny the motion to compel.

Before filing the Motion to Compel, there were only two options available to Maxwell/G-Doffee to "confer" with Mr. Mosley. First, he could attempt to place a *collect phone call* to Mr. Mosley, *on a monitored and recorded phone line*, knowing that the person in the Arkansas Attorney General's Office who answered the call would almost certainly *not* accept it. Second, he could use *regular mail* to send a handwritten letter to Mr. Mosley stating the same fuzzily articulated arguments that he has made in his Motion to Compel. The chances that such a letter, containing those same arguments, would have caused Mr. Mosley to fold his cards and abandon his objections to the disputed discovery are nil. Likewise, the chances of Maxwell/G-Doffee withdrawing his Motion to Compel, after receiving Mr. Mosley's letter standing by his objections, are nil.

Thus, *in the context of this case*, denying Maxwell/G-Doffee's Motion to Compel, because he failed to confer with Mr. Mosley before filing it, elevates form over substance and accomplishes *nothing* except postponing *when* I must resolve this discovery dispute. It also unnecessarily requires Maxwell/G-Doffee to jump through two meaningless hoops: (1) "conferring" with Mr. Mosley, by sending him a letter using regular mail that asks him to abandon his objections to the disputed discovery, and waiting ten days to two weeks to receive a negative response from

him; and (2) then refiling his Motion to Compel, using regular mail, many weeks after he initially filed *the same motion* in October.[3]

Rule 1 of the Federal Rules of Civil Procedure provides that: "These rules should be construed, administered, and employed by the courts and the parties to secure the just, speedy, and inexpensive determination of every action." In the context of a § 1983 action brought by a *pro se* prisoner, I believe it is contrary to Rule 1 and the intended purpose and spirit of Rule 37(a)(1) for the "confer obligation" to be turned into a catch-22 that results only in unnecessary delay, expense, and wasted judicial resources. *See Al Jabbar Salam v. Bland et al.*, Case No. 4:20-cv-462-JM-BD at *Doc. 36* (E.D. Ark. December 2, 2020) (rejecting defense argument that *pro se* prisoner's motion to compel was not ripe because prisoner failed to confer or attempt to confer with defense counsel prior to filing motion).

---

[3] If I were to deny the Motion to Compel on the procedural grounds suggested by Mr. Mosley, Maxwell/G-Doffee would be forced to use regular mail to send a letter asking him to abandon his objections. From the date Maxwell/G-Doffee placed that letter in the prison mail system, until Mr. Mosley received it, would probably take at least 7 to 10 days. Perhaps a week later, Mr. Mosley would mail Maxwell/G-Doffee his predicted negative response, which Maxwell/G-Doffee would receive 7 to 10 days later. Maxwell/G-Doffee would then use regular mail to refile the identical Motion to Compel now before me. *Thus, after two or three months of needless circling, we would all be right back where we started, with me still needing to resolve the discovery dispute.*

Accordingly, I reject Defendants' procedural argument that Maxwell/G-Doffee's Motion to Compel should be denied because he failed to "confer" with Mr. Mosley about the discovery dispute *before* he filed that motion.

## II. Maxwell/G-Doffee's Motion to Compel Discovery

Rule 26(b) of the Federal Rules of Civil Procedure states:

(1) Scope in General.

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Under this rule, "[b]road discovery is an important tool for the litigant, and so '[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1039 (8th Cir. 2011) (alteration in original) (quoting Fed. R. Civ. P. 26(b)(1)).[4]

---

[4] As previously explained, the arguments in Maxwell/G-Doffee's Motion to Compel only broadly hinted at the real legal problems with many of Defendants' objections to his discovery. I have independently analyzed Defendants' objections and, based on that analysis, I have concluded most of those objections are without merit.

A.     **Wooten's Objections To Interrogatories - Nos. 1 and 5-13**

In **Interrogatory No. 1**, Maxwell/G-Doffee asked Wooten to disclose all times "a security check/treatment procaution" [sic] was conducted on "East Isolation #1 (one) cell (inmate Leandro Guzman (#166403)" between 6:30 p.m. and 6:30 a.m. on November 14-15, 2018.   Wooten makes the conclusory objection that answering this question will reveal "sensitive security information" which will jeopardize inmate and staff safety and reveal "movements and patterns that could lead to the planning of an inmate attack, escape or other altercation."  *Doc. 26 at p. 16*.  Try as I might, I can think of *no reason* why disclosing this information (about *one inmate* during a *twelve hour period on one day in 2018*) would pose any reasonable risk to anyone's *current safety*, much less assist an inmate in planning an "attack, escape or other altercation."   I also find this conclusory objection to be hopelessly overbroad and void for vagueness.  Accordingly, Wooten is ordered to fully and completely answer Interrogatory No. 1.

In **Interrogatory No. 5**, Maxwell/G-Doffee asks whether, "Inmate Job Assignment" classification records indicate that, on March 16, 2019, Maxwell/G-Doffee or "inmate B/M Dixon, Vernell #103362A" was assigned by Classification to work West [sic]Isolation"?

Defendant Wooten's objection reads:

> **ANSWER No. 5**:   Objection. The requested information is not relevant to any material issue in this lawsuit, which claims a use of

7

excessive force concerning the alleged incident of November 14, 2018.[5] Further object that the information concerning other inmates is confidential information to which inmates are not allowed access, as such information poses a risk to the security of the institution, staff and inmates. Plaintiff has no legitimate need for the information.

*Doc. 26 at p. 17.*[6]

Maxwell/G-Doffee contends the information he seeks in this interrogatory, and others, is intended to develop evidence of Wooten's more favorable treatment of another inmate, Vernell Dixon. His legal theory seems to be that Vernell Dixon also refused to perform a cell clean-up (presumably under circumstances similar to Maxwell/G. Doffee's own refusal to do so which led to the November 14, 2018 disciplinary), but he did not receive a disciplinary. Maxwell/G-Doffee argues that he is entitled to develop these facts to demonstrate Wooten's intent to retaliate against him.[7]

---

[5] Defendants acknowledge that, in their Response to this Interrogatories, they mistakenly characterized Maxwell/G-Doffee's claim as one for "excessive force," rather than correctly characterizing it as a "retaliation claim."

[6] Defendant Wooten made this *same* objection to disputed Interrogatory Nos. 6-13. The only claims that remain in this case are retaliation claims. As Maxwell/G-Doffee correctly notes in his Motion to Compel, the requested information could be relevant to those retaliation claims.

[7] This is similar to how an employee attempting to prove discrimination would argue that an employer's more favorable treatment of a similarly situated employee demonstrates unlawful intent. In that context, the Eighth Circuit has instructed that a plaintiff has the burden to present "specific, tangible evidence" that employees who were similarly situated in all respects" to him received different treatment." *Rose–Maston v. NME Hosp., Inc.*, 133 F.3d 1104, 1109 n. 4 (8th Cir.1998) (first quote); *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2002) (second quote). In the prison context, it would be incumbent on a prisoner to show that he was similarly situated to any other prisoner he contends was treated more favorably. This is a difficult showing to make. Because the scope of discovery is broader than the standard for admissibility at trial, inquiry into

Accordingly, Wooten's objection to answering this interrogatory is overruled. Wooten is ordered to provide a full and complete answer to Interrogatory No. 5.

**Interrogatory Nos. 9**, **10**, and **11** also seek information relevant to Maxwell/G-Doffee's claim that Wooten treated Vernell Dixon more favorably than him during incidents that required them to clean up water. The dates of the incidents are in February and March of 2019, during the relevant time period that Wooten allegedly engaged in the acts of retaliation against Maxwell/G-Doffee. Because these three interrogatories are reasonably calculated to lead to the discovery of relevant evidence, Wooten's objections to answering them are overruled. Wooten is ordered to provide full and complete answers to Interrogatory Nos. 9, 10, and 11.

**Interrogatory Nos. 6, 7, 12, and 13** seek information about specific times "B/M Inmate Barbra Frank Barnes" entered and exited the East and West Isolation Unit to conduct inmate shaves. It appears this interrogatory has a nexus to Wooten's allegedly retaliatory conduct toward Maxwell/G-Doffee. The requested information is limited to three dates in March of 2019, which is during the relevant time period for the alleged acts of retaliation by Wooten. Because these four interrogatories are reasonably calculated to lead to the discovery of relevant

---

how Wooten treated other inmates similarly situated to Maxwell/G-Doffee is relevant and permissible discovery that may support his retaliation claim against Wooten.

evidence, Wooten's objections are overruled. Wooten is ordered to provide full and complete answers to Interrogatory Nos. 6, 7, 12, and 13.

**Interrogatory No. 8** asks Wooten to consult the security logs to determine: (a) the time on February 26, 2019 that Maxwell/G-Doffee entered West Isolation (Maxwell/G-Doffee believes it may have been around 6:30 p.m.); (b) the stated reason or purpose for Maxwell/G-Doffee entering West Isolation; (c) the time Maxwell/G-Doffee left West Isolation; and (d) the ADC staff who signed this security check in the security log. Because this interrogatory appears to be reasonably calculated to lead to the discovery of facts that may support Maxwell/G-Doffee's retaliation claim against Wooten, his objection to answering Interrogatory No. 8 is overruled. Wooten is ordered to provide a full and complete answer to this interrogatory.

### B.    Wooten and Bentley's Objections to Requests for Production Nos. 1 and 3

Requests for Production Nos. 1 and 3 seek copies of the East Isolation Security Check Log for November 14, 2018, from 6:30 p.m. through 11:00 p.m. (RFP No. 1) and the West Isolation Security Check Log for February 25, 2019 through February 27, from 6:30 p.m. - 6:30 a.m. (RFP No. 3). *Doc. 26 at pp. 24-25*.

The Court agrees with Defendants that valid security concerns justify their objection to producing copies of *everything* contained in these security logs over a period of several days, without Maxwell/G-Doffee making any showing of how that

information might be relevant to his retaliation claim. Accordingly, Maxwell/G-Doffee's Motion to Compel the production of the documents described in Requests for Production Nos. 1 and 3 is denied.

If this case survives summary judgment and proceeds to trial, the Court may reconsider allowing carefully redacted copies of the security logs (containing only relevant information specifically related to Maxwell/G-Doffee's retaliation claims), to be provided to Maxwell/G-Doffee.[8]

### III.  Conclusion

IT IS HEREBY ORDERED THAT Plaintiff Maxwell/G-Doffee's Motion to Compel, *Doc. 26*, is hereby GRANTED IN PART AND DENIED IN PART. Defendants must provide responses to Interrogatory Nos. 1, and 5-13 within twenty-one (21) days of their receipt of this Order.

Dated this 10th day of December, 2020.

*/s/ J. Thomas Ray*
UNITED STATES MAGISTRATE JUDGE

---

[8] **Defendants and their attorney are ordered to preserve all of the pages in the security logs that Maxwell/G-Doffee has requested so that they are available for possible future redaction and disclosure.**